# LINTHICUM HEIGHTS COMPANY

*vs.*

# THE FIREMEN'S INSURANCE COMPANY OF NEWARK, N. J.

*Fire Insurance: contract of sale by insured; effect on policy.*

Where a contract of sale is executed, a vendee is considered in equity as the real owner of the land; though the vendor may still retain the title, he holds only as trustee for the vendee, to whom all the beneficial interests passes with a lien on the estate, as security for the unpaid purchase money.            p. 71

A contract of sale avoids a policy of insurance that contains a provision declaring it to be void, if the interest of the insured is other than an unconditional and sole ownership.      pp. 69-70

*Decided February 13th, 1919.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*S. S. Field,* for the appellant.

*W. Calvin Chesnut,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1912 Mrs. Elizabeth V. Benson owned an undivided one-third interest in a lot or parcel of land, and improvements thereon, in Anne Arundel County, Maryland, and her brother, G. Milton Linthicum, owned the remaining two-thirds interest in said lot, and on the 27th day of September, 1912, the Firemen's Insurance Company of Newark, New Jersey, issued to them, "as their respective interests may appear," a policy of fire insurance to the amount of $1,200.00 on the dwelling house on said lot for the term of five years. On the 1st of December, 1913, Mrs. Benson and her husband conveyed her one-third interest in said property to the Linthicum Heights Company of Baltimore City, in fee, and on the 23rd of January, 1915, G. Milton Linthicum and his wife conveyed his two-third interest in the property to the Linthicum Heights Company of Baltimore City, in fee. On the 7th of December, 1915, Seth H. Linthicum, vice president of the Linthicum Heights Company, sent the policy of insurance and the following letter to J. Arthur Wickham, who, at the time the policy was issued, was, as stated by him, solicitor for Edward G. Parker & Sons, through whom the policy was obtained from the general agents of the insurance company in Baltimore City:

"December 7th, 1915.

"Mr. J. Arthur Wickham,

"32 South St., Baltimore.

"Kindly make the enclosed policy payable to the Linthicum Heights Company of Baltimore City, as Mrs. Benson and Dr. Linthicum have no further interest in the same. We remain,

"Very truly yours,

"J. Charles Linthicum & Brother."

Mr. Wickham states that he took the letter and policy to the office of the agents of the Firemen's Insurance Company; that they, or some one in their office, took a copy of the letter and then handed the letter back to him; that he left the

64 LINTHICUM HEIGHTS vs. FIREMEN'S I. CO.

Opinion of the Court.                                    [134

policy with the agents of the company, and that they returned it to him the next day with the following rider attached to it,. as of December 8th, 1915 : "Loss or damage, if any, under this policy shall be payable to the Linthicum Heights Company of Baltimore City, mortgagee, or trustees, as interest may appear." Mr. Wickham further testified that the policy remained in his office until after the dwelling house referred to therein was destroyed by fire on June 14th, 1916.

On the 20th of January, 1915, the Linthicum Heights Company entered into the following agreement with Walter P. Schmick and Kathryn F. Schmick, his wife, for the sale of four lots or parcels of land, being parts of the land conveyed by the deeds referred to and including the part thereof on which the dwelling house mentioned in said policy was located :

"This Agreement, Made in duplicate this 20th day of January, in the year nineteen hundred and fifteen, by and between the Linthicum Heights Company of Baltimore City, a corporation, of the first. part, and Walter P. Schmick and Kathryn F. Schmick, his wife, of Baltimore City, State of Maryland, of the second part :

"Witnesseth, That the said party of the first part does hereby bargain and sell unto the parties of the second part, and the said parties of the second part do hereby purchase from the said party of the first part, all that lot of ground and improvements thereon, designated as Lots Nos. 95, 96, 82 and 83 on the north side of Greenwood Road and extending to the south side of Maple Road, as said roads are laid down on the plat of Linthicum Heights Annex, said plat being filed in Plat Book No. 1, folio     , in the Clerk's Office in the Circuit Court of Anne Arundel County.

"At and for the price of thirty-six hundred dollars ($3,600.00), which said sum is to be paid as follows :

"The said parties of the second part are to convey unto the said party of the first part all their right, title and interest in and to property known as No.

2615 West Fayette street, in the City of Baltimore aforesaid, which said property is for the purposes of this contract valued at Eleven Hundred Dollars ($1,100.00), and is subject to a certain mortgage in the original sum of $1,100.00, but on which said property the parties of the second part have now an equity of Two Hundred and Fifty Dollars ($250.00), which said equity is to be applied on the purchase price of the property hereby sold, the party of the first part to assume the unpaid balance on said mortgage, and the balance of said purchase price, to wit, Thirty-three Hundred and Fifty Dollars ($3,350.00), to be paid in monthly installments of Twenty-five Dollars ($25.00), upon the first day of each month after signing of this agreement, with interest at the rate of 6 per cent. per annum; out of said monthly installments is to be deducted the interest on the balance of the purchase price, and taxes, insurance and other expenses, assessments or charges as are levied or are to be levied on said property by the State or County authorities; interest to be charged only on monthly balances.

"It is understood and agreed that when the principal sum shall have been reduced to the sum of Two Thousand Dollars ($2,000.00), the party of the first part, at its option, may require the parties of the second part to procure a Building Association mortgage for the said balance, and have the said property deeded to the said parties of the second part, by a good and merchantable title.

"It is further understood and agreed that if default be made by the parties of the second part, their heirs or assigns, in any of the monthly payments aforesaid, and such default shall continue for a period of thirty days from the date on which said payment became due and payable, such default shall be considered a breach of this contract on the part of the parties of the second part, and the whole amount due on this contract shall immediately become due and payable, and if not paid, this contract shall, at the option of the party of the first part, be null and void, and all payments made

under this contract by the parties of the second part shall be retained by the party of the first part as rent for the aforesaid property.

"And when the full purchase price shall have been paid, the party of the first part undertakes and agrees to give to the parties of the second part a good and sufficient deed in fee simple to the property herein described, which deed shall contain the certain restrictions, conditions and covenants contained in deeds of Linthicum Heights Annex, which restrictions, conditions and covenants fully appear in a deed from the Linthicum Heights Company to James F. McDermott, Jr., *et al.* See Land Records Anne Arundel County.

"The parties of the second part agree not to assign their interest under this contract without the written consent of the party of the first part.

"The party of the first part reserves to itself, its successors and assigns, the right to the use of the well located on one of the lots hereby sold, and further reserves a right of way or easement four feet in width across the rear of lots Nos. 82 and 83 and a right of way or easement from the rear of lots 82 and 96 to the well immediately above mentioned.

"The party of the first part undertakes and agrees to make the following improvements, to wit:

"Install a furnace in the main building to heat the first and second floors; install a range in the kitchen to heat the room above; to wire the house and place fixtures in same; build a porch along the front of the house, at least seven feet wide; install bathroom fixtures in the room over the kitchen; clean up the property by removing rubbish on same; place sink in kitchen; repair the shutters that have blown off of the house; run a pipe from the pump to the bathroom with a small tank in the attic, or place an air-pressure tank in the basement, at the option of the party of the first part, and install a concrete cesspool; these improvements to be made in thirty days from the date of this agreement."

Walter P. Schmick and his wife entered into possession of the property under the above contract and occupied the dwelling thereon until the 14th of June, 1916, having paid in the meantime $560.00 on account of the purchase price.

The dwelling house was destroyed by fire on the 14th of June, 1916, and the Firemen's Insurance Company refused to pay the amount of insurance thereon on the following grounds: (1) Because the policy had not been transferred or made payable to the Linthicum Heights Company as the *owner* of the property; (2) Because the Linthicum Heights Company did not furnish proofs of loss; (3) Because the policy was avoided by the contract of sale between the Linthicum Heights Company and Walter P. Schmick and wife. On the 12th of June, 1917, the Linthicum Heights Company filed a bill of complaint in the Circuit Court of Baltimore City against the Insurance Company to reform the policy so as to make it payable to the Linthicum Heights Company of Baltimore City and to enforce it accordingly, and the present appeal is from the decree of the Court below dismissing the bill.

Assuming that the rider or endorsement placed on the policy on December 8th, 1915, was the result of a mistake which could be corrected by a court of equity, and that the evidence in the case shows a waiver by the defendant of the provisions of the policy requiring proofs of loss, it is clear that under the provisions of the contract of insurance, and the decisions in this State, the policy in question was avoided by the contract of sale between the Linthicum Heights Company and Walter P. Schmick and wife. The policy contains the following provisions:

> "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured

touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"The entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than 15 days at any one time; or if the interest of the in-. sured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss."

The contract of sale to Walter P. Schmick and wife was made on the 20th of January, 1915, and if the policy had, on December 8th, 1915, been made payable to the Linthicum Heights Company of Baltimore City as the owner of the property, as the appellant contends it should have been in accordance with the letter of December 7th, 1915, to J. Arthur Wickham, the interest of the insured would not have been truly stated in the policy, nor was the interest of the Linthicum Heights Company in the property at that time that of *unconditional and sole ownership.*

In the case of *Skinner & Sons' Co.* v. *Houghton,* 92 Md. 68, the facts of the case, as stated by the Court, were as follows: "On the 18th of February, 1899, Caroline S. Houghton and her husband entered into an agreement with Charles

E. Savage by which they agreed to sell and convey to him or his assigns, upon written notice of the acceptance of the agreement within sixty days from its date, certain property in the City of Baltimore for the sum of fifty thousand dollars. It was agreed that the purchaser should pay the purchase money within ninety days after the notification of the acceptance and two hundred dollars, paid when the agreement was made, was to be credited on the amount. Within the sixty days (on April 14th), Savage assigned his option to the appellant and notified Mr. and Mrs. Houghton of his acceptance and assignment, to which they gave their assent. On the 11th day of May, 1899, some of the improvements on the property were destroyed by fire, having been insured in eight companies prior to the execution of the agreement. At the time of the fire the Houghtons were still in possession of the property, none of the purchase-money, except the two hundred dollars, had been paid, and the deed had not been executed." Two of the insurance companies referred to by the Court, viz., the German American Insurance Company, of New York, and the Merchants' and Manufacturers' Fire Insurance Company of Baltimore City, denied all liability, and refused to pay the amount of their policies on the ground that under the provisions thereof the policies were avoided by the contract of sale. The policies contained provisions like the policy involved in this suit. In reference to the effect of the contract of sale upon the title to the property, the Court said: "Under a contract of this kind, in equity, 'the vendee is in fact considered as the owner of the land, although the vendor may still retain the title, he holds it as trustee for the vendee, to whom all the beneficial interest has passed, with a lien on the estate as security for any unpaid portion of the purchase-money.' " The Court held that the contract of sale avoided the policies, and in reference to the provision declaring that the policies should be void "if the interest of the insured be other than unconditional and sole ownership" said: The policies before us contain provisions, in addition to what we have already stated, that they should be void 'if the interest of the

insured in the property be not truly stated therein,' and 'unless otherwise provided by agreement and indorsed hereon or added thereto * * * if the interest of the insured be other than unconditional and sole ownership.' There is no endorsement to the contrary and therefore it was represented to the companies that the *interest* of the insured was 'unconditional and sole ownership' when the policies were issued, and under the other provision any change in the interest held when the insurance was taken would invalidate the policy. It would certainly be placing a very liberal construction on these provisions, in favor of the assured, to say that after April 14th, 1899, the interest of Mrs. Houghton was still an unconditional and sole ownership. She and her husband were then bound under their hands and seals to give the appellant a good and merchantable fee-simple title to the property within ninety days from April 14th. She was not then the *sole owner,* as the appellant then owned the equitable estate in the property and any loss by fire would be sustained by it. In equity it was regarded as the owner. There are a number of cases cited in note to 13 *Ency. of Law* (2nd ed.) 234, deciding that one who is in possession of real property under a contract to purchase, and not in default in the payment, is in equity the owner of the land and hence is entitled to insure as 'sole and unconditional owner,' and on page 235 of the same volume it is said 'a vendor in a land contract who has admitted the vendee into possession is not sole and unconditional owner, although he retains the legal title.' We do not understand why the possession of the vendee should make any difference in determining whether the vendor is the sole and unconditional owner. If the vendor conveys by deed all his interest and takes a mortgage for the purchase-money, but remains in possession, he would not be the sole and unconditional owner. And if he has done an act which vests another with such an estate as to make him sustain the loss, if destroyed or injured by fire, and cause him to be regarded in equity as the owner, as has been done here, how can it be said

that the interest of the vendor is still that of *unconditional and sole* ownership?

The learned counsel for the appellant insists that the rule announced in *Skinner & Sons' Co.* v. *Houghton, supra,* can not apply in this case because "In substance and effect the agreement with the Schmicks was simply a contract of rental at $25.00 per month, with an option to purchase at $3,600." But the language of the contract is "This Agreement * * * Witnesseth that the said party of the first part does hereby bargain and sell unto the parties of the second part, and the said parties of the second part do hereby purchase from the said party of the first part," etc. In the case of *Swartz* v. *Realty Co.,* 106 Md. 290, the Court said: "Since the decision in *Brewer* v. *Herbert,* 30 Md. 301, it has been the law of this State that under such a contract as this, *in equity,* 'from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the interim between the agreement and the conveyance.' The terms of the contract in that case were in effect the same as those in this—there the contract said 'has this day sold' and here the appellee 'does hereby bargain and sell,' and the appellant 'does hereby purchase.' JUDGE MILLER said: 'By such terms the *title* in equity passes from the date of the contract,' and he then went on to show that the fact that possession was to be given in the future (six months in that case, but immediately here) did not affect the question."

We are unable to adopt the view of the appellant that the contract with Walter P. Schmick and wife was not a binding agreement for the sale of the property, and under the authorities referred to, and the cases therein cited, we must affirm the decree of the Court below.

*Decree affirmed, with costs*