Including Cases of January, April and October Terms, 1924.

## FRONTIER MORTGAGE CORPORATION *vs.* MORRIS HEFT ET AL.

*Fire Insurance—In Behalf of Mortgagee—Breach of Condition—Payment of Loss—Subrogation of Insurer.*

A policy of insurance, and every clause and part thereof, is the contract, and like all contracts should be construed so as to effectuate the real purpose and intention of the parties, giving to the language employed, when unambiguous, its ordinary and usually accepted meaning.                              p.12

It is the duty of the court to construe the clear and plain terms of the policy according to their true meaning, without regard to whether such construction will result in hardship to one or the other of the parties.                              p. 13

The mortgagor and mortgagee may each insure his own interest, the former insuring the property, which he may do for its full value as the owner thereof, the latter being entitled to insure to the extent of his debt, and no farther.       p. 13

The mortgagor, insuring the property, is entitled, notwithstanding the incumbrance, to recover the full amount of his loss, within the limits of the insurance.                 p. 13

The mortgagee, having insured his debt, has the right, on the destruction of the premises by fire before the extinguishment of the mortgage, to be paid his debt by the insurers, if not in excess of the insurance, and the underwriters, in such case, become entitled to the debt, which they can recover from the mortgagor, and are subrogated to the rights of the mortgagee.

p. 13

The payment of the insurance to the mortgagee does not discharge the mortgagor from the debt, but the insurers become

the latter's creditors, and have a right to an assignment of the mortgage debt from the mortgagee.                                    p. 13

There is no privity in law or fact between the mortgagor and mortgagee as regards a policy covering the interest of the mortgagee alone, and the mortgagor can take no advantage therefrom.                                    p. 13

If the insurance is on the property of the mortgagor, taken out in his name and for his benefit, and is assigned to the mortgagee for the purpose of better securing the mortgage debt, payment by the insurer to the mortgagee, in case of loss, is for and on behalf of the mortgagor, and discharges the mortgage debt in whole or *pro tanto,* depending upon the amount of the insurance, and there is in such case no right of subrogation. p. 14

Under a "mortgagee clause" attached to a fire insurance policy, which provides that whenever the company shall pay the mortgagee any sum for loss or damage under the policy "and shall claim" that, as to the mortgagor or owner, no liability therefor exists, the insurer shall, to the extent of such payment, be subrogated to all the rights of the mortgagee, the mere claim by the insurer that no liability exists as to the mortgagor or owner is insufficient to entitle the insurer to subrogation, but the actual existence of such non-liability is necessary for this purpose.                                    pp. 16, 17

The question of the existence of such non-liability, by reason of the breach of a material condition of the policy, may properly be passed upon by the court in which the insurer, as assignee of the mortgagee, or by reason of subrogation to his rights, is seeking to assert such rights as against the mortgagor.
                                    p. 17

To recover in such a suit the plaintiff must prove the breach of a material condition of the contract of insurance, and all defenses to this contention are available to the defendant mortgagor under a general issue plea and plea for defense on equitable grounds.                                    pp. 17, 18

Where a policy of fire insurance provides that it shall be void if the interest of the insured is other than unconditional and sole ownership, there is no liability under the policy to a mortgagor, in whose name a policy was procured by the mort-

gagee, for his own benefit, after a transfer of the property by
the mortgagor.                                                    p. 18

The liability of a mortgagor who has transferred the mort-
gaged property, on mortgage notes signed by him, even if an
insurable interest, is not unconditional and sole ownership of
the property, within the requirement of an insurance policy.
                                                                  p. 18

*Decided June 20th, 1924.*

Appeal from the Superior Court of Baltimore City (Gor-
ter, C. J.).

Action by the Frontier Mortgage Corporation against
Morris Heft and Bessie Heft, subsequently entered to the
use of the Central Fire Insurance Company of Baltimore.
From a judgment for defendants, plaintiff appeals.
Reversed.

The cause was argued before Pattison, Urner, Adkins,
Offutt, and Digges, JJ.

*Joseph France,* with whom were *Venable, Baetjer & How-
ard* on the brief, for the appellant.

*J. Paul Schmidt,* with whom were *Isaac Lobe Straus,
Michael Miller* and *Robert L. Mainen* on the brief, for the
appellees.

Digges, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore
City by the Frontier Mortgage Corporation, assignee, on
November 3rd, 1922, against the defendants Morris Heft and
Bessie Heft, his wife.

The declaration contains the money counts, and an addi-
tional count, declaring on the mortgage principal and inter-
est notes.

The defendants pleas were, "never indebted," and "never
promised as alleged," and the third plea for defense on
equitable grounds, in which equitable plea it is set forth that

the defendants executed the said mortgage to the Linthicum Realty Company on June 11th, 1920; that on July 8th, 1921, defendants sold the property covered by the mortgage to Abel Rosenthal, and bought from Rosenthal property located on Madison Avenue, Baltimore City; that Rosenthal purchased the Maple Avenue property subject to the mortgages thereon, and the defendants purchased the Madison Avenue property subject to the mortgages then upon it; that subsequently deeds were executed consummating the sale or exchange of properties between Rosenthal and the defendants, with knowledge of the Provident Savings Bank, holder of the first mortgage on the Maple Avenue property, and the Linthicum Realty Company, the holders of the second mortgage on said property; that the property on Maple Avenue was insured against loss by fire in favor of the first and second mortgages; that subsequently the building on the Maple Avenue property was burned and the insurance company refused to make payment therefor to the mortgagees, whereupon the holder of the first mortgage foreclosed the same, at which sale Rosenthal became the purchaser, and upon his refusal to pay the second mortgage the Frontier Mortgage Corporation made demand therefor to the insurance company, and the defendants have been informed, believe, and therefore allege that the said insurance company has duly paid to the Frontier Mortgage Corporation the amount of its mortgage and the indebtedness upon which suit is herein brought; that the Frontier Mortgage Corporation knew of the ownership of the property by the said Abel Rosenthal and of the circumstances under which he took title.    Filed February 27th, 1923.    Replication of the Frontier Mortgage Corporation, filed April 27th, 1923, joined issue on the defendants first and second pleas, and to the third plea entitled "A defense on Equitable Grounds," denied that the Central Fire Insurance Company had paid the defendants' indebtedness to the plaintiff.

On May 15th, 1923, the case was tried *ex parte,* the defendants failing to appear, before Judge James P. Gorter, without the aid of a jury, and resulted in a verdict for the

plaintiff for the sum of $3,737. On the 16th day of May, 1923, the case was entered to the use of the Central Fire Insurance Company of Baltimore.

Subsequently the judgment was stricken out, by agreement, and later, on October 15th, 1923, the case was again entered to the use of the Central Fire Insurance Company of Baltimore.

On October 15th, 1923, the case was again tried before the court without the aid of a jury, resulting in a verdict and judgment for the defendants. From this verdict and judgment, the Frontier Mortgage Corporation, plaintiff, and Central Fire Insurance Company, equitable plaintiff, have appealed.

The evidence as agreed for the purpose of the record is substantially as follows:

On June 11th, 1920, the appellees, defendants below, executed a second mortgage on real estate belonging to them located on Maple Avenue, Avondale Park, Baltimore, to the Linthicum Realty Company, to secure the payment of the sum of $4,500, said sum being a portion of the purchase price of the property covered by the mortgage. The principal of the debt was evidenced by two promissory notes dated as of the date of the mortgage, signed by Morris Heft and Bessie Heft, his wife, the defendants, and payable to the order of the Linthicum Realty Company. One of the principal notes was for the sum of $1,300, maturing July 1st, 1920 (which was paid at maturity), and the other for the sum of $3,200, payable three years after date. There were also twelve interest notes, each for the sum of $48 and payable quarterly.

On April 27th, 1921, the Linthicum Realty Company assigned the mortgage, together with the principal note for $3,200, and eight interest notes, to the Frontier Mortgage Corporation, for which the Frontier Mortgage Corporation paid the sum of $2,880. This assignment was duly recorded and the notes were endorsed by the Linthicum Realty Company in blank. The mortgage is in the usual form and contains a covenant on the part of the mortgagors to keep the property insured for the benefit of the mortgagee and its

assigns.  By deed dated July 20th, 1921, and promptly recorded, the defendants conveyed in fee to Abel Rosenthal and Howard S. Kroh all of the lots and property described in the mortgage, subject to a first mortgage and the above described second mortgage.

At the time the mortgage was assigned to the Frontier Mortgage Corporation, there was no policy of insurance assigned to it, but subsequently that corporation applied to the Central Fire Insurance Company for a policy on the property described in the mortgage, in the name of Morris Heft and Bessie Heft, his wife, payable to it as assignee of the second mortgage.

The Central Fire Insurance Company, on August 12th, 1921, issued a policy insuring Morris Heft and Bessie Heft, his wife, from loss by fire on the frame building located on the lots described in the mortgage, for one year to an amount not exceeding $3,200, payable to the Frontier Mortgage Corporation, assignee of second mortgage, as interest may appear.

To the policy was attached the following mortgagee clause:

"Mortgagee Clause Without Full Contribution.

"Loss or damage, if any, under this policy, shall be payable to Frontier Mortgage Corporation of Buffalo, N. Y., assignee of second mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall

come to the knowledge of said mortgagee (or trustee), and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer for the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim.

"Attached to and made part of Policy No. 328298 of the Central Fire Insurance Co. of Baltimore."

Among others the policy contained the following printed stipulations:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building or ground not owned by the insured in fee simple, or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss.

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto.

"If fire occur the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith

separate the damaged and undamaged personal prop-
erty, put it in the best possible order, make a com-
plete inventory of the same, stating the quantity and
cost of each article and the amount claimed thereon;
and, within sixty days after the fire, unless such time
is extended in writing by this company, shall render a
statement to this company, signed and sworn to by
said insured, stating the knowledge and belief of the
insured as to the time and origin of the fire; the inter-
est of the insured and of all others in the property;
the cash value of each item thereof and the amount
of loss thereon; all incumbrances thereon; all other
insurance, whether valid or not, covering any of said
property; and a copy of all the descriptions and sched-
ules in all policies; any changes in the title, use, occu-
pation, location, possession, or exposures of said prop-
erty since the issuing of this policy; by whom and for
what purpose any building herein described and the
several parts thereof were occupied at the time of
fire; and shall furnish, if required, verified plans and
specifications of any building, fixtures, or machinery
destroyed or damaged; and shall also, if required, fur-
nish a certificate of the magistrate or notary public
(not interested in the claim as a creditor or otherwise,
not related to the insured) living nearest the place of
fire, stating that he has examined the circumstances
and believes the insured has honestly sustained loss to
the amount that such magistrate or notary public
shall certify.

"This company shall not be held to have waived any
provision or condition of this policy or any forfeiture
thereof by any requirement, act, or proceeding on its
part relating to the appraisal or to any examination
herein provided for; and the loss shall not become
payable until sixty days after the notice, ascertain-
ment, estimate, and satisfactory proof of the loss
herein required have been received by this company,
including an award by appraisers when appraisal has
been required.

"No suit or action on this policy, for the recovery
of any claim, shall be sustainable in any court of law

or equity until after full compliance by the insured with all of the foregoing requirements, nor unless commenced within twelve months next after the fire."

The premium on this policy was paid by the Frontier Mortgage Corporation, and the policy delivered to and held by that corporation.

On September 8th, 1921, the property was totally destroyed by fire.

The Frontier Mortgage Corporation demanded payment to it under the mortgage clause of the Central Fire Insurance Company, which first denied liability and later paid the amount which the mortgage corporation had invested in the mortgage, with interest, amounting in all to $3,093.60. This sum was paid after the Frontier Mortgage Corporation had entered suit in the Superior Court of Baltimore City against the appellee, and that case entered to the use of the Central Fire Insurance Company. No claim was made by the defendants against the fire insurance company, and no proof of loss was furnished by any one, nor was there ever any demand made on the defendants by the insurance company for payment of the mortgage notes.

The case was heard in the Superior Court before the judge sitting as a jury, and at the conclusion of the testimony the appellant offered four prayers, and appellees offered four prayers, as follows:

*First.*—The plaintiff prays the court to rule as a matter of law that the uncontradicted evidence shows that the mortgage and notes offered in evidence were assigned for value to the plaintiff, a body corporate, and have not been paid by the defendants, and if, sitting as a jury, it finds that the plaintiff has not by act or word recognized the defendants' grantees as debtors in the place and stead of the defendants; and shall further find that the defendants did not have title to the property insured by the policy offered in evidence on and after the date it was issued by the equitable plaintiff, then its verdict must be for the plaintiff for the sum of $3,200, with interest from September 11th, 1921.

*Second.*—The plaintiff prays the court to rule as matter of law that the uncontradicted evidence in this case shows that the indebtedness evidenced by the mortgage and notes offered in evidence was assigned for value to the plaintiff, a body corporate, and has never been paid by the defendants. That at the time the equitable plaintiff's policy of insurance, offered in evidence, was issued, the defendants were not the owners of the property insured, and liability under said policy was denied to both mortgagee and insured; that the plaintiff has not in any way recognized the defendant's grantees mentioned in evidence as debtors in the place and stead of the defendants, and, therefore, its verdict as jury must be for the plaintiff for $3,200, with interest from September 11th, 1921.

*Third.*—The plaintiff prays the court to rule as matter of law that if, sitting as a jury, it finds that the defendants did not have title to the property insured by the policy offered in evidence, on and after the date it was issued by the equitable plaintiff, and further finds that liability under said policy because of the fire mentioned in evidence was denied both to the defendants (the insured) and the plaintiff (the mortgagee), then payment by the equitable plaintiff to the plaintiff was not payment of the defendants' indebtedness to the plaintiff.

*Fourth.*—The plaintiff prays the court to rule as matter of law that if it finds, sitting as a jury, that the equitable plaintiff paid the plaintiff value in settlement of a claim against it under the policy mentioned in evidence after suit was instituted by the plaintiff against the defendants; and further finds that the defendants were not the owners of the property insured at or after the policy was issued by the equitable plaintiff, and further finds that the plaintiff corporation is an assignee for value of the notes and mortgage offered in evidence, then its verdict must be for the plaintiff.

And the defendants offered the following prayers:

*First.*—The defendants pray the court to rule as a matter of law that the plaintiff has offered no evidence legally suffi-

cient to entitle it to recover, and the verdict must be for the defendants.

*Second.*—The defendants pray the court to rule as a matter of law that the plaintiff has offered no evidence under the pleadings in this case to entitle it to recover, and the verdict must be for the defendants.

*Third.*—The defendants pray the court to rule as a matter of law that, according to the undisputed evidence in this case, the plaintiff is not entitled to recover, and the verdict must be for the defendants.

*Fourth.*—The defendants pray the court to rule as a matter of law that as the undisputed testimony is that the plaintiff accepted, collected and received from the Central Fire Insurance Company the amount of its claim, it is therefore not entitled to recover, and the verdict must be for the defendants.

The action of the trial court in rejecting all of the plaintiff's prayers and granting all of the defendants' prayers is the subject of the single bill of exceptions contained in the record. The defendants' prayers constitute a demurrer to the pleadings and evidence. The evidence is undisputed and the prayers of the defendants challenge its legal sufficiency, and, if properly granted, are a complete bar to the right of the plaintiff to recover.

A policy of insurance, and every clause and part thereof, is the contract, and, like all contracts, should be construed so as to effectuate the real purpose and intention of the parties, giving to the language employed, when unambiguous, its ordinary and usually accepted meaning. *Maryland Ins. Co. v. Bossiere,* 9 G. & J. 155; *Washington Fire Ins. Co. v. Kelly,* 32 Md. 421; *Westchester Ins. Co. v. Weaver,* 70 Md. 536; *Agric. Ins. Co. v. Hamilton,* 82 Md. 88.

The rule adopted in some jurisdictions, that insurance contracts are to be construed most strongly against the insurer, has been distinctly repudiated by this Court, and the sounder view that the intention of the parties as gathered

from the whole instrument now prevails. Cases above cited. The law presumes the insurer and insured understood their contract as executed, and that every intelligible condition embraced therein was inserted by design and intended to accomplish some material purpose. It is the duty of the court to construe the clear and plain terms and conditions of the policy according to their true meaning, without regard to whether such construction will result in hardship to one or the other of the parties; or, as stated by Judge Boyd in *Joffe* v. *Niagara Fire Ins. Co.,* 116 Md. 155, and later approved in *Miller* v. *Home Ins. Co.,* 127 Md. 140, "when the terms of a contract are clear and unambiguous courts have no right to make new contracts for the parties or ignore those already made by them simply to avoid seeming hardships."

The mortgagor and mortgagee may each insure his own interest; the first insures the property, which he may do for its full value as the owner thereof; the latter, to the extent of his debt, and no farther. The first, notwithstanding the incumbrance on his property, is entitled to recover the full amount of his loss, within the limits of the insurance; the latter, if the premises are destroyed by fire before the extinguishment of the mortgage, has the right to be paid his debt by the insurers, if not more than the insurance; and the underwriters, in such a case, become entitled to the debt, and can recover the same from the mortgagor, and are subrogated to the rights of the mortgagee. The payment of the insurance does not discharge the mortgagor from the debt, but the insurers become his creditors and have a right to an assignment of the mortgage debt from the mortgagee. The mortgagor derives no benefit from a policy covering the interest of the mortgagee alone, but is bound to pay the mortgage debt to the insurers when they become his substituted creditors. There is no privity in law or fact between the mortgagor and mortgagee in such a case, and the mortgagor can take no advantage of the policy of the mortgagee for his debt. *Washington Fire Ins. Co.* v. *Kelly, supra; Carpenter* v. *The Providence Washington Insurance Co.,* 16 Pet. 501.

If on the other hand the insurance is on the property of the mortgagor, taken out in his name and for his benefit, and assigned to the mortgagee for the purpose of better securing the mortgage debt, then, in case of loss, payment by the insurer to the mortgagee is for and on behalf of the mortgagor, and discharges the mortgage debt in whole or *pro tanto,* depending upon the amount of the insurance, and there is no right of subrogation.

A very large amount of money is loaned, and secured by mortgage, on property, the principal value of which is represented by the buildings located on the mortgaged ground, and which buildings the mortgagee requires to be insured by the mortgagor, and the policy so framed or endorsed as in case of loss to inure to the benefit of the mortgagee. Most policies or contracts of insurance contain a variety of provisions, conditions and stipulations, which are required to be observed and performed by the insured owner, and which the failure to observe and comply with, render the policy void and unenforceable, but over which the mortgagee has no control, and the non-observance or breach of which he rarely has notice of until loss has occurred. It became evident, in order to render this class of property available for mortgage loans, that the penalty for failure to comply with certain of the terms and conditions of the insurance contract should not apply to the mortgagee, and finally led to the adoption, in large measure, of what is known as the standard mortgage clause, and identical with that attached to the policy in this case.

After providing that the insurance affected by the policy, in case of loss shall be payable to Frontier Mortgage Corporation, assignee of second mortgage, as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner, nor by change in title or ownership of the property, it further provides as follows:

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or

owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer for the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim."

The Frontier Mortgage Corporation became the holder and owner of the second mortgage by virtue of an assignment from the Linthicum Realty Company, executed on April 27th, 1921; it received no assignment of an insurance policy with the mortgage, but later, on August 12th, 1921, applied for and received from the Central Fire Insurance Company the policy of insurance in this case, which was issued in the name of the defendants, with loss payable to it, and right of subrogation, as provided by the terms of the standard mortgagee clause above set forth. This was after the defendants had sold and conveyed the property described in the mortgage and policy to Abel Rosenthal, by deed dated July 20th, 1921, thereby completely divesting themselves of any and all title to the property, as well as the possession, which was at or about the same time given to the vendee. The policy was delivered to the mortgagee, and the premium paid by it. The fire which destroyed the insured property occurred on September 8th, 1921, at a time when the defendants had no vestige of title to the property. No demand for payment was made by the defendants, no proof of loss furnished, and, as far as the record discloses, no action or claim of any kind to the benefit of the insurance fund was ever made until sued by the mortgagee on the mortgage notes, although they had covenanted to insure and keep insured the mortgaged property for the benefit of the mortgagee and its assigns. Under circumstances such as here presented it could be con-

tended, with reason and authority, that the policy of insurance covered the mortgagee's interest alone.

"Where the mortgagee procures insurance on his separate interest, for his own benefit and at his own cost, and without any agreement with the mortgagor in respect thereto, the mortgagee is entitled to the proceeds, and the mortgagor has no interest in the policy, and is not entitled to have the money collected on a loss applied in reduction of the mortgage debt; and this rule applies notwithstanding the policy, which, in fact, is effected by the mortgagee alone, nominally insures the mortgagor with loss payable to the mortgagee." 26 *C. J.*, page 442, and cases there cited.

In the view we take of this case it is not necessary to decide that this insurance was, or was not, solely on the interest of the mortgagee, for the reason that we reach the same conclusion in either event.

The appellees insist that the true interpretation of the subrogation section of the mortgagee clause attached to this policy, and quoted above, is: First, that the *mere claim* by the insurer that no liability exists under the policy as to the mortgagor or owner is not sufficient to entitle the insurer to subrogation to the debt and security held by the mortgagee upon payment to it of the mortgage debt, but that the nonliability of the insurer to the mortgagor must be a fact, and, second, that such fact must be judicially determined before it is entitled to demand subrogation or assignment of security from the mortgagee.

The first of these propositions is undoubtedly sound, the words "and shall claim that, as to the mortgagor or owner, no liability therefor existed," must be held to mean that the claim is well founded, and that as a matter of fact no liability exists on the part of the insurer to the mortgagor or owner. *Aetna Life Ins. Co.* v. *National Union Fire Ins. Co.*, 98 Neb. 153; *Traders Ins. Co.* v. *Race,* 142 Ill. 338; *O'Neil* v. *Franklin Fire Ins. Co.*, 145 N. Y. Supp. 432.

The right to subrogation does not depend upon the claim of no liability, but upon the fact of no liability. The claim

must be based upon a state of facts which, under the contract of insurance, would exempt the insurer from liability to the mortgagor or owner. To give any other construction would, as suggested by counsel for appellees, enable the underwriters to escape liability in every case where a mortgagee clause such as this is attached to the policy by merely claiming it is not liable to the mortgagor, paying the mortgage and being subrogated to all securities held by the mortgagee, and then proceed to reimbursement at the expense of the mortgagor, for whose benefit and protection the insurance was in fact secured.

Obviously a construction producing or permitting such a result could not be sanctioned. Nor could it have been the intention of the parties. There may be cases where the non-liability of the insurer to the mortgagor or owner should be judicially determined in a separate proceeding prior to its subrogation to the rights of the mortgagee, but we see no sound reason why in the great majority of cases this question cannot be properly passed upon by the court in which the insurer as assignee of the mortgagee is attempting to assert its rights against the mortgagor. This case comes under the latter class. It is the breach or non-compliance by the mortgagor of or with one or more of the material conditions of the contract which works a forfeiture of his right to recover against the insurer and entitles it to subrogation.

From the time of forfeiture the liability of the insurer to the mortgagor ceases, the contract continues for the benefit of the mortgagee alone, and the insurer is subrogated to the rights of the mortgagee upon its paying the mortgagee the mortgage debt. The parties are in the same position and have the same legal rights as if the interest of the mortgagee had alone been insured.

As we have said, the forfeiture and liability of the insurer to the mortgagor is properly determinable in this case. To recover the appellant plaintiff must prove a breach of a material condition of the contract of insurance, a breach the legal effect of which will be to render the policy void as

to defendants. All defenses to this contention were available to the defendants under their general issue pleas and plea for defense on equitable grounds.

One of the conditions of the contract is, "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building or ground not owned by the insured in fee-simple." There is no endorsement on or addition to the policy waiving this condition as to the mortgagor. The insured had no title whatever to the property covered by the policy, either at the time the contract was made or when the loss by fire occurred, this being conclusively shown by the evidence and by the direct statement to that effect by the defendants in their equitable plea. The defendants sold and conveyed the property to Rosenthal by deed dated July 20th, 1921, and the contract of insurance was not made until August 12th, 1921, more than three weeks later. Neither did they have possession, having surrendered that at the time of the execution of the deed. The only possible interest which they had at the date of the contract and time of the fire was liability to the mortgagee on the mortgage notes. It is suggested that this constituted an insurable interest. Admitting this to be true, without so deciding, surely it is not *unconditional and sole ownership,* and if it is not, the policy is void as to the mortgagor. *Vineland v. Security Ins. Co.,* 53 Md. 276; *Hartford Fire Ins. Co.* v. *Keating,* 86 Md. 130; *Skinner & Sons* v. *Houghton,* 92 Md. 68; *Bakhaus* v. *Caledonian Ins. Co.,* 112 Md. 676; *Linthicum Heights Co.* v. *Firemen's Ins. Co.,* 134 Md. 62.

As was said in the *Vineland case, supra,* the question before us is not whether the defendants in this case had an insurable interest in the building insured; but whether by the terms of the contract under which they claim they had that kind of interest, to wit: title in fee, to the land on which the house stood, which the contract stipulates they should have, or the contract should be void.

We have nothing to do with the question as to whether it is equitable to have such a condition inserted in the contract, or the motive of the insurance company for so doing. It is there as part of the contract into which the insured entered, and they must be bound by its legitimate meaning.

It follows from what we have said that there was error in granting the defendants' prayers and rejecting the prayers of the plaintiff, and the judgment must be reversed.

> *Judgment reversed and new trial awarded, with*
> *costs to appellant.*