ABIEL LEONARD, Appellant, v. THE CHICAGO & ALTON RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, May 15, 1893.

1. Carriers: PAROL OR WRITTEN: CONSIDERATION. Plaintiff made a parol contract with defendant to furnish a special live-stock train to ship his cattle to the Chicago market within a certain time. . The train was furnished and the cattle loaded as agreed, and just as the train was about to move off defendant's agent presented him a contract which defendant signed. Held, the written contract was substituted for the original verbal one and the cancellation thereby of old oral contract is a sufficient consideration for the substituted written one.

2. ———: CONTRACTING AGAINST NEGLIGENCE. A common carrier is not allowed the benefit of a stipulation in a contract of affreightment protecting it from its own negligence.

3. ———: CONTRACT OF AFFREIGHTMENT: INTERPRETATION. In the interpretation of contracts of affreightment courts adopt the rule ordinarily applied to the interpretation of contracts, that is, to look into the circumstances surrounding the transaction and connected with its making, including the object in view and the nature of the performance required.

4. ———: ———: ———: PUBLIC POLICY. A carrier cannot be permitted negligently to delay a shipment of cattle beyond the time it could well make and does customarily make, and then excuse itself by showing that it still made the trip within, the period agreed upon as a reasonable time, as such interpretation would make the stipulation against public policy which does not permit a carrier to be negligent with impunity. Such stipulation means the cattle were to be taken with all reasonable dispatch, and was a protection against a failure so to dispatch them.

5. ———: SHIPMENT OF LIVE STOCK TO MARKET: DILIGENCE. When a common carrier undertakes to transport fat cattle to market in a live-stock train it must be held to have undertaken a business which calls for diligence and dispatch commensurate with the trust it has accepted.

6. ———: CONTRACTS: INTERPRETATION: NOTICE OF DAMAGE. The provision of a shipping contract that the shipper shall give notice of his damages within five days after the train's arrival at its destination, relates to damage to the cattle themselves and not to damage suffered by a change in the market, nor does a provision relieving the carrier from liability for or damage after delivering upon stock yards tract refer to loss by fall in market.

*Appeal from the Saline Circuit Court.*—Hon. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

*Leslie Orear* and *A. F. Rector*, for appellant.

(1) The parol contract was when entered into a perfect and complete contract in all its details, and after plaintiff loaded his cattle into the defendant's special train it was fully executed on his part. The written contract signed by plaintiff after the transportation had begun, if it was to have any effect as a substituted contract for the parol contract, must be supported by a fresh consideration; the plaintiff contends that such substituted contract to have any effect on the subject-matter must have been made while the old contract was executory on both sides. In this case the parol contract was not abrogated but acted on by both parties; the defendant relinquished no rights acquired by it to make a consideration supporting the substituted contract. Bishop on Contracts, secs. 68, 174, 768; *Roberts v. Wilkinson*, 34 Mich. 129; *Church v. Irons Works*, 15 Vroom, 129; *Cutter v. Cochran*, 116 Mass. 408. (2) The rule that all prior negotiations are merged in a subsequent written contract, does not

apply to a case like this, because the rights of the parties and their liabilities are fixed by having acted under the verbal agreement. *Bostwick v. Railroad*, 45 N. Y. 716; *Shelton v. Merchant's Disp. Co.*, 36 N. Y. Sup. Ct. 527; *Coffin v. Railroad*, 64 Barb. 379; *Railroad v. Boyd*, 91 Ill. 268; *Co. v. Cornforth*, 3 Col. 280; s. c., 25 Am. Rep. 757; *Mason v. Railroad*, 25 Mo. App. 473; Hutchinson on Carriers, sec. 89. (3) The plaintiff having paid the full rate for shipping his cattle to Chicago, such rate was the consideration for the full performance of the duty imposed by law upon defendant as a common carrier without any other contract than the law imposes. *McFadden v. Railroad*, 92 Mo. 343; Lawson on Contracts of Carriers, sec. 212 *Bissell v. Railroad*, 25 N. Y. 442; s. c., 82 Am. Dec. 369; *Seybolt v. Railroad*, 95 N. Y. 562; *Wallace v. Matthews*, 99 Am. Dec. 473; *Express Co. v. Nock*, 2 Duvall, 562; s. c., 87 Am. Dec. 510. (4) Having established the negligent delay of defendant and the other points admitted by defendant, the question arises, can the plaintiff recover damages consequent upon negligent delay, notwithstanding the terms of the written contract releasing the carrier from answering for damages for a delay of twelve hours beyond the time necessary to complete the transportation? Can the carrier be safely negligent for twelve hours under such a contract? We answer, no. 2 Kent's Commentaries, 607; *Boscowitz v. Express Co.*, 93 Ill. 523; *Railroad v. Lockwood*, 17 Wall. 357. The law does not allow a common carrier to be safely negligent for any time or to any degree; he cannot contract so as to shield himself from the result of slight negligence no more than he can for gross negligence. Lawson on Contracts of Carriers, sec. 31, *et seq.; Rosenfield v. Railroad*, 103 Ind. 121; s. c., 53 Am. Rep. 500; *Railroad v. Heaton*, 37 Ind. 448; *Railroad v. Selby*, 47 Ind. 471.

The stipulations in this contract cannot be held to apply to a case involving as a cause of action the negligence of the carrier, without making such stipulation, in effect to be an agreement for absolute exemption. *Moulton v. Railroad*, 31 Minn. 85; *Railroad v. Simpson*, 30 Kan. 645. (5) The rule is different if negligence is the cause of the delay; to illustrate: the stipulation referred to would excuse the defendant, if delay was caused by a strike, or a mob should tear up the track, or an incendiary fire should destroy a bridge, or any other cause not the fault of the carrier, and, if the stock had been delivered in a reasonable time under these circumstances, the delay would have been excusable. The carrier must however exercise due care to guard against delay. *Railroad v. Chapman*, 133 Ill. 96. It has been so held in Missouri. *Dawson v. Railroad*, 79 Mo. 300. (6) The loss or damages referred to in the fifth clause of the special contract relied on by respondent are such as accrue to the shipper by reason of injuries to the stock itself caused by such delay, and has no reference to other loss which the delay may cause the shipper, as for loss of market. A similar contract has been so construed by Judge Cooley. *Sisson v. Railroad*, 90 Am. Dec. 252.

*Boyd & Murrell*, for respondent.

(1) The written contract read in evidence was the only evidence as to what the contract for shipment was in this case, and parol evidence was inadmissible to contradict or vary it, or even to show that the train on which shipment was made was either a special train or a wild train. *Railroad v. Cleary*, 77 Mo. 637–8; *O'Brien v. Kenney*, 74 Mo. 125, and, cases cited; *Snider v. Adams*, 63 Mo. 376; *Brown v. Railroad*, 18 Mo. App. 568; Hutchinson on Carriers [Last Ed.] secs.

126–128. (2) The defendant had the right to limit its liability by special contract, and while it could not stipulate against liability for damages arising from its own negligence, it had the right to agree with plaintiff as to what would be a reasonable time in which the shipment should be made, and such agreement should be upheld unless the time agreed upon was actually an unreasonable time. *Dawson v. Railroad*, 79 Mo. 300; *McFadden v. Railroad*, 92 Mo. 348. (3) The evidence offered fails to show that plaintiff gave the notice required by the ninth clause of the written cantract. Such contracts in regard to notice of loss are valid and binding on the shipper, and proof of a compliance with this contract was essential to a recovery in this case. *Dawson v. Ralroad*, 76 Mo. 515; *Rice v. Railroad*, 63 Mo. 314; *Brown v. Railroad*, 18 Mo. App. 568–577; *McBeath v. Railroad*, 20 Mo. App. 445; *Thompson v. Railroad*, 22 Mo. App. 326.

ELLISON, J.—Plaintiff shipped from Saline county, Missouri, to Chicago, Illinois, ninety-six head of fat cattle over defendant's road for the purpose of selling on the market there. The cattle were negligently delayed, as is charged, so that instead of arriving at Chicago on the morning following the shipment in time for that day's market they did not arrive till late in the afternoon, too late for that day's market, in consequence of which plaintiff was compelled to place the cattle on the market of the next day, on which they were fifty cents per hundredweight lower in price than on the previous day, thereby entailing a loss to plaintiff. He brought this suit for the difference between what he could have sold his cattle for and what he did sell them for on the day following the day he expected to sell them. Plaintiff was forced to a non-suit on account of the ruling of the trial court on the admissi-

bility of testimony and failing to have the non-suit set aside has brought the case here.

I. Plaintiff contends that the contract of shipment which he made with defendant was verbal. Defendant claims that it was written. Plaintiff then says that though written, defendant is liable to the action brought. Plaintiff claims that, some days before the seventeenth day of November, 1891, he entered into parol contract with the defendant through its proper agents and officials, whereby it was mutually agreed that the defendant would send a special stock train to Mt. Leonard, a station on defendant's line of road, and take plaintiff's stock for shipment by special train from that point to Chicago, Illinois, in time for the market of November 18, 1891, said stock consisting of ninety-six head of fat cattle. Plaintiff under the terms of said agreement was to deliver said cattle for shipment on the morning of the seventeenth, and load them into said special train ready for shipment under said agreement. That in performance of said contract the defendant did, on the morning of the seventeenth day of November, 1891, send a special train to Mt. Leonard for the purpose of taking plaintiff's cattle under the contract to Chicago, Illinois, and plaintiff loaded the cattle into the special train for shipment and fully performed all the terms of the parol contract as far as he had agreed to do. That after the cattle had been received for transportation under said contract and the transportation had begun, and after the cattle had entirely passed out of the control of plaintiff, and just before the train containing the cattle had started on its way to Chicago, the station agent of the defendant at Mt. Leonard handed the plaintiff the special written contract spoken of to sign, and he signed it; that he did so without any new consideration moving to him in any way whatever.

Plaintiff offered evidence tending to show that defendant's servants negligently and without any necessity delayed the train at several intermediate points whereby it was delayed for ten hours. That the train which defendant was to furnish was to be a special through stock train to arrive at Chicago next day after shipment, in the morning, in time for that day's market. That instead of taking the train through defendant's servants made of it a local freight train receiving and transacting miscellaneous local business. That it had been and was at the time of his contract with defendant the custom of defendant to make up special stock trains such as this was and run through from stations in Saline and Lafayette counties to Chicago in twenty-one hours, which would be in time for the market of the day following shipment. That defendant undertook to carry plaintiff's cattle on this occasion through to Chicago in time for the market of the following day. Plaintiff offered also some additional matter of like character as well as the damage he sustained, all of which was excluded by the court.

Defendant pleaded in defense the terms and provisions of the written contract of shipment whereby it was agreed and stipulated that the reasonable time in which to transport said cattle was and should be the schedule time of freight trains on the time card of the defendant in force at said date of shipment, with twelve hours added thereto, not including time lost by stops for feed, water, rest or for proper and humane care of said cattle, and that if said stock should be transported within said time the plaintiff should not have any claim for damages for delay in transit, and that defendant should not be liable therefor, and that the time should be estimated from the time the train should start from Mt. Leonard. That said contract further specified that: "As to stock consigned to stock

yards the tracks of which connect with those of the. first party or to any person at such yards, the second party agrees that all liability shall end when it delivers the cars containing the stock upon the tracks of said stock yards company; and the first party shall not be liable for any loss or damage that may thereafter arise to said stock from any cause." And that it was fur-- ther specified in said contract, that: "It is further mutually agreed, that should 'loss or damage of any kind occur to the property specified in this contract, while such property is in the possession of said first party, the second party shall in five days after such loss or damage has accrued give notice in writing of his claim to the first party."

In our opinion when plaintiff accepted and signed the written contract under the circumstances shown before the train started without protest and without any other apparent reason than as a substitute for the original verbal contract at a time when he might have refused to sign or have withdrawn his cattle, he must be assumed to have agreed to the cancellation or anulling of the oral contract. A cancellation of an oral contract is a good consideration for the substituted contract. Bishop on Contracts, secs. 68, 768; *O'Bryan v. Kinney*, 74 Mo. 125.

II. The case then stands upon the written contract with its provisions of exemptions of liability on the part of defendant. Among those provisions as before stated is one stating that the parties agreed that schedule time and twelve hours additional should be considered reasonable time. If for any reason other than negligence defendant's train failed to arrive at Chicago within the time it customarily did with live stock trains from the same points, this provision would relieve the defendant. It is a provision relieving it from the strictness of the rule with which the common

law binds a carrier, but it will not relieve defendant of any act of negligence. The defendant is not to be allowed the benefit of a stipulation protecting it from its own negligence. This latter proposition in its general application will not be disputed. But defendant says that it is only required as a carrier to take the stock through in a reasonable time and that this provision is an agreement as to what shall be considered a reasonable time, discharging defendant if the transportation is made within such time. We are not inclined to adopt this view. The contract is not to deliver the cattle at Chicago in a time specified. We agree that the parties could make such a contract. But the contract was for a reasonable time. Now for an interpretation of this contract we must adopt the rule we ordinarily apply to the interpretation of contracts, that is, to look into the circumstance surrounding the transaction and connected with its making, including the object in view and the nature of the performance required. Plaintiff had a large lot of fat cattle for market at Chicago. He asked and obtained a special live-stock train for the purpose of transportation. It is known to all, and to none better than a carrier, that quick transportation of live stock to market is one of the chief considerations that enters into its shipment. It must be assumed that defendant in undertaking to convey fat cattle to the chief market of the country undertook to do so in the absence of a specified time, in as quick a time as could reasonably be made with such trains by the use of diligence and care. The provision in the contract that a certain time was a reasonable time, was not a provision to carry the cattle on that time. A fair interpretation of the contract, in view of the surrounding circumstances and the situation of the parties, is that the cattle were to be taken with all reasonable dispatch, and the

provision naming what should be a reasonable time was for protection against a failure to transport with all reasonable dispatch. And any failure short of the negligence of defendant would be covered by this provision. But defendant cannot be permitted to negligently delay plaintiff's cattle beyond the time it could well make, and did customarily make, and then excuse itself by showing that it still made the trip within the period agreed upon as a reasonable time. The effect of such excuse, if allowed, would be to permit such provision of the agreement to shelter and protect negligence in a common carrier, a thing which public policy forbids. A carrier ought not to be allowed under any circumstances to be negligent with impunity. Or, as it is expressed in *Rosenfeld v. Railroad*, 103 Ind. 123, "The law will not allow a common carrier to contract to be safely negligent."

When a common carrier, under the circumstances here offered to be shown, undertakes to transport fat cattle to market in a live-stock train, it must be held to have undertaken a business which calls for diligence and dispatch exactly commensurate with the trust it has accepted. It ought not to require any argument to show that a delay of such cattle destined for such purpose with the resulting shrinkage of weight, as well as from value arising from the fluctuations and uncertainty of the market, will result in great damage, and should not occur if it could reasonably be avoided by an exercise of care and diligence.

III. But defendant says that there was no offer of evidence to show that plaintiff had given notice of his damage within five days after arrival at Chicago, as the contract provides in the words hertofore set forth. In our opinion that clause of the contract relates to injury or damage to the cattle themselves while in the possession of the defendant, and would therefore cover the

shrinkage of the cattle. But such provision will not cover a damage which the shipper may suffer by a change in the market or the like. A change in the market has no reference to an injury to the cattle and cannot be included within the terms of the provision of the contract.

The further provision of the contract that the defendant should not be liable for "loss or damage which may arise to the stock from any cause," after it is delivered upon the tracks of the Stock Yards Company, can have no application to loss and damages of the character here sued for.

As a result of the foregoing we must reverse the judgment and remand the cause. All concur.