IDEAL PUMP & MANUFACTURING CO., Respondent, v. AMERICAN CENTRAL INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, December 31, 1912.

1. **INSURANCE: Additions: Adjoining: Physical Connection.** An insured operated a "Ricker Factory" and took out a policy of fire insurance covering a "One-story frame building with shingle roof and its additions, adjoining and communicating, occupied as a factory for the manufacturing of rickers." The property consisted of a main building, a lumber shed and paint shop thirteen feet distant; a coal shed fifteen feet distant; and a store and workroom twenty-eight feet distant. There was no physical connection by belts, pipes or otherwise. It was *held* that the words "additions adjoining and communicating" did not necessarily mean attached to the main building. That they could apply to detached buildings belonging to the one factory.

2. ———: **Contracts: Interpretation: Circumstances and Conditions.** The terms, or words of a written contract may be interpreted in the light of the circumstances and conditions surrounding the parties at the time they made it.

3. ———: ———: ———: **Action of Parties.** In arriving at the true meaning of a written contract, it is proper to show how the parties themselves interpreted it and how they acted under it.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb*, Judge.

AFFIRMED.

*D. M. Wilson, Jeffries & Corum* and *Williams & Williams* for appellant.

(1) Parol evidence was inadmissible to show what was intended to be included in the policy, or to add to, contradict, or vary its terms. The suit is upon the policy of insurance, and plaintiff—in this form of action—is concluded by the writing. It was error to permit witnesses to testify to conversations with defendant's agent at the time the policy of insurance was taken out and also after the fire. 1 Cooley's Briefs, 745-46; Ferguson v. Lumber Men's Ins. Co., 88 Pac. (Wash.) 128; Sanders v. Cooper, 115 N. Y. 279; Meriwether v. Phoenix Ins. Co., 137 Mo. App. 96. The policy of insurance specifically describes a one-story frame building, with shingle roof, occupied as a factory for manufacturing rickers, situated on lots Nos. 1 and 2, in block 12, in Green City. The buildings destroyed were not "additions, adjoining and communicating" with this frame building. They were not connected with it in any manner whatever, but were disconnected, distinct and separate buildings. They are not covered by the word "additions" in the policy. Arlington v. Insurance Co., 101 N. Y. Sup. 772; 19 Cyc. 665; North British Mercantile Ins. Co. v. Tye, 58 S. E. 110; Arlington Mfg. Co. v. Norwich Union Fire Ins. Co., 107 Fed. 662; Franklin Fire Ins. Co. v. Hellerick, 49 S. W. (Ky.) 1066; Evanston Golf Club v. Home Ins. Co., 119 Mo. App. 175; Rickerson v. Hartford Fire Ins. Co., 43 N. E. (N. Y.) 856; 1 Cooley's Briefs, 743; Bickford v. Aetna Ins. Co., 63 Atl. 552; Ferguson v. Lumber Men's Ins. Co., 88 Pac. (Wash.) 128; Meriwether v. Ins. Co., 137 Mo. App. 96.

*R. E. Ash* and *Earl F. Nelson* for respondent.

(1)  Parol evidence of the circumstances attending the transaction is admissible to put the court in the position of the parties to the contract, where an ambiguity arises as to the property intended to be covered by the policy of insurance.  Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, l. c. 62; Pietri v. Seguent, 96 Mo. App. 258; Capital Fire Ins. Co. v. Carroll (Ok.), 109 Pac. 535.  (2)  Where the acts and declarations of the parties to a contract disclose their understanding of its meaning it is the duty of the Court to adopt that understanding and parol evidence of such acts and declarations is properly admissible.  Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, l. c. 73; Tetley v. McElmurry, 201 Mo. 382, l. c. 393; Fuller Bros. v. Fidelity and Casualty Co., 94 Mo. App. 490.  (3)  The terms of the policy in suit insuring respondent on its one story frame building, with shingle roof and its additions, adjoining and communicating, including foundations, occupied as a factory for the manufacturing of rickers, situated on lots Nos. 1 and 2, block 12, in Green City, Missouri, and the machinery and stock located in said buildings, cover respondent's structures which were destroyed by fire.  Tate v. Jasper County Mutual Ins. Co., 133 Mo. App. 584; Ferguson v. Lumbermen's Ins. Co. (Wash.), 88 Pac. 128; Montana Stables Co. v. Union Assur. Co. (Wash.), 101 Pac. 882; Guthrie Laundry Co. v. Northern Assur. Co. (Ok.), 87 Pac. 649; Mausel v. Fire Ass'n of Philadelphia (N. Y.), 69 N. Y. Sup. 181; Arlington v. Colonial Assur. Co. (N. Y.), 180 N. Y. 337, 73 N. E. 34; Shepard v. Germania Fire Ins. Co. (Mich.), 130 N. W. 626; Meigs v. London Assur. Co. (C. C. A.), 134 Fed. 1021.

ELLISON, J.—Plaintiff was the owner of property upon which and within which it manufactured rickers.  It took out a fire insurance policy, and there-

after a loss occurred which defendant declined to pay and this action followed. The judgment in the trial court was for plaintiff.

The question which the record presents for decision is whether the property burned was covered by the insurance. The descriptive clauses of the policy read as follows:

"$700—On one-story frame building, with shingle roof and its additions, adjoining and communicating, including foundations, occupied as a factory for the manufacturing of rickers, situated on the east side of Grant street, lots Nos. 1 and 2, block 12, in Green City, State of Missouri.

$600—On furniture and fixtures contained therein, including iron safe.

$400—On their stock of merchandise, consisting principally of lumber, bolts, castings, rope and other articles for the manufacturing of rickers, and other merchandise kept for sale not more hazardous, all only while contained in the building and its additions above described."

The factory consisted of the main building and three other structures. One 35 by 60 feet, was known as the lumber shed, paint shop and storage room, which was 13 feet distant from the main building. Another, 12 by 14 feet, was a coal house, and some castings were kept there; and it was fifteen feet from the main building. The third was a store and work house and was about 28 feet from the main building. The last mentioned was an old house and had once been a residence. All were parts of an entire plant.

These three detached buildings were destroyed by fire and plaintiff claims they are "additions, adjoining and communicating" with the "one-story frame building" as set forth in the policy. Defendant insists they are not.

A legal rule constantly applied by appellate courts leaves defendant at a disadvantage. That is,

every question of fact must be resolved in favor of the court's finding, if it is supported by substantial evidence; and, in determining whether there is such evidence, every reasonable inference and circumstance is to be allowed in plaintiff's favor.

Defendant asserts that the face of the policy as applied to the property, excludes the buildings from the description. It is true there was not a certain character of connection between the buildings in controversy and the main building. There were no pipes, beltings, covered ways, etc. But the foregoing descriptive terms of the policy did not require any. Nor was there any especial door opening out of the main building leading specially to the other buildings; though the principal door of the main building opened within about thirteen feet of the lumber and paint room, and a cinder path led from one to the other.

But the policy did not require any particular mode of getting from one to the other. All the policy required was that the additions to the main building should be "adjoining (to it) and communicating" with it. Defendant has affirmed in its policy, an instrument written and phrased by it, in its own chosen language, that there were additions adjoining the main building and communicating therewith; that they were situated on certain lots and that they were occupied as a ricker factory. If the buildings in controversy are not the ones, where are they?

It appeared that there was once an improvement to this main building and as the case involves the construction of phrases and the meaning of words, counsel have been cautious in the use of them. Defendant calls it an "addition" and thereby insists it has found application for the words it wrote in the policy. Plaintiff calls it an "enlargement" and refuses to concede that it was an addition; and if it was, it says it still would not suffice, for the word used in the policy was the plural, "additions." However, seemingly in defer-

ence to defendant, plaintiff conceded there might be ambiguity and set about to prove how the defendant itself interpreted the policy. And the law justifies a look at the surrounding circumstances and the situation of the parties, in order to an understanding of a contract. Things with a doubtful or ambiguous appearance are frequently made plain by a knowledge of existing conditions; and the meaning of words is often controlled by the connection in which they are used. Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, 62; Leonard v. Chicago & Alton Ry. Co., 54 Mo. App. 293, 301. In point of fact the line dividing lots one and two runs east and west, but it was shown that the agent of each of the parties, at the time the insurance was taken, thought it ran north and south. If the line ran north and south the main building as enlarged would have been entirely on lot one; and hence there would have been no need of including lot two, if it had been intended to confine the insurance to the main building, as enlarged. So, when the parties stated in the descriptions that a part of the property insured was on lot two, they meant the whole property consisted of something more than the main building.

In order to brace its side of the case plaintiff invoked another well recognized rule for the interpretation of contracts, viz. the construction the parties themselves placed upon it. Tetley v. McElmurry, 201 Mo. 382, 394; Laclede Const. Co. v. Moss Tie Co., 185 Mo. l. c. 73; Sedalia Brewing Co. v. Sedalia Water Works Co., 34 Mo. App. 49. To show this, testimony was introduced that defendant's agent considered the burned buildings were included in the policy; the report of the fire made to defendant clearly shows this. And so other acts on defendant's part tended to show the same construction. Among others, defendant marked on this policy, under the head of "other insurance," that there was $2000 other insurance on contents of the lumber shed; thus manifesting fully that it

understood the shed was embraced in the present policy. Some of this evidence was objected to, but there can be no doubt it was properly admitted. It was in no way a violation of that rule which prohibits parol evidence to alter or vary the terms of a written contract.

The foregoing considerations relieve the case from application and control of authorities cited by defendant. It is not to be denied that an addition to a building may commonly mean something attached thereto, but no one should say that such word *necessarily* means that. It often is plainly seen to have a broader meaning. A clearly appearing intention will give it a broader meaning. Circumstances and conditions, as, for instance, such as shown in this case, will influence the interpretation. So we repeat that the expression: "One-story frame building, and its additions adjoining and communicating," does not always mean structures physically attached to, or otherwise connected with the building by machinery, or specific passways. That cannot be said as a matter of law. Tate v. Insurance Co., 133 Mo. App. 584; Phenix Ins. Co. v. Martin, 16 So. 417; Marsh v. Concord Mut. Ins. Co., 71 N. H. 253; Montana Stables v. Union Assur. Soc., 53 Wash. 274; Shepard v. Germania Ins. Co., 165 Mich. 172; Guthrie Laundry Co. v. Ins. Co., 17 Ok. 571. These cases do not involve the exact situation of buildings found in this case, but we think they illustrate the views we have stated.

We think the judgment should be affirmed. All concur.