EAGLE STAR & BRITISH DOMINIONS INSURANCE
COMPANY ET AL. *v.* JOSEPH FLEISCHMAN.
[No. 45, October Term, 1938.]

434

The cause was argued before BOND C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*H. Winship Wheatley, Jr.,* and *Morris Simon,* with whom was *H. Winship Wheatley, Sr.,* on the brief, for the appellants.

*Charles C. Marbury,* with whom was *M. Hampton Magruder* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This appeal is from a judgment entered on the verdict of a jury in the Circuit Court for Prince George's County, where the appellee brought separate suits against the three appellants on fire insurance policies issued by them, the cases having been consolidated and tried as one. The sole question before us is whether there was legally sufficient evidence in the case to require its submission to the jury.

On December 5th, 1931, Joseph Fleischman, the appellee, received a deed for property which he had recently bought at a foreclosure sale at the court house door in Prince George's County, comprising three contiguous parcels, containing 126.786 acres, 31.82 acres and 8.904 acres, and referred to as being the land described in a certain mortgage from Joseph Witt and wife. On July 4th, 1935, an incubator and brooder house and hay barracks, situated on the "Providence Farm Annex," were destroyed by fire.

It was admitted at the trial that proofs of loss dated August 31st, 1935, were received by appellants on September 3rd, 1935, and there appears a stipulation that the sound value of the buildings so destroyed was $1,900.

There were six dwelling houses on the entire tract of land, three of which were on what is called the "Providence Hospital Farm" and three on what was known as the "Providence Farm Annex," in addition to which on the main farm, as well as on the Annex, were barns and chicken houses. The farm proper was not fenced, nor were there any markers to distinguish it from the Annex, also referred to as "Lower Farm," and from the record it appears that the only fence on the entire farm was one enclosing a cow pasture. Although there was an entrance from the highway to the main farm and another to the Annex, it was possible to cross the fields from one farm to another with horses or tractor. Photographs of all the buildings on the property, including what remained of the burned buildings, were shown to the appellee, after which he was asked if the burned buildings were on the main Providence Hospital Farm, to which he answered, "I bought it up here as the Providence Hospital Farm, the whole thing." He also testified that he had never been on the farm before the sale and that he knew the property only under the name of Providence Hospital Farm.

The appellants had insured certain improvements described in the policies as being located on "Providence Hospital Farm," and denied liability under the policies on the ground that the burned buildings were on the "Providence Farm Annex," rather than on the farm proper, and that there were buildings on the main farm, not destroyed by the fire, answering the description of all buildings insured under the policies. Appellee testified he had procured the policies through Young and Simon, insurance agents in Washington, that he took one of the Witt policies to an insurance broker, and selected certain buildings covered thereby to be insured for reduced amounts in new policies, and the three policies in suit were accordingly issued to him. During the course of his direct examination, he was asked if the insurance companies inspected the property before the policies were delivered to him, to which he answered,

"Before the policies were written, was issued to me—(objection) (Mr. Simon) that calls for yes or no. Q. (by Mr. Marbury) Was it inspected? A. It was not inspected, but the man come over there and looked at the building. (Objected to as not responsive). Q. Did any representative from the insurance company come out to inspect your property? A. Yes, sir. Q. Who was that? A. This man come in with a card from Young and Simon—(Objection)."

The appellee contends that the insurance companies are bound because, even though the damaged buildings were undeniably located on the Annex, when they caused an inspection of them to be made, they were chargeable with notice of their location. The appellants on the other hand denied making such an inspection. Joseph Notes, an insurance broker, a witness for the appellants, testified that in January, 1933, Fleischman went to his office with an expired fire insurance policy which had been issued to Witt, and selected certain buildings covered by said policy, to be insured for smaller amounts than those contained in the Witt policy. Notes testified that he had been on the Providence Hospital Farm before Fleischman's visit to his office, that he accompanied a friend named Abraham, who was an acquaintance of Fleischman, and that on that visit he saw several of the buildings, not including those destroyed by fire, but never visited the property for the purpose of making an inspection for the insurance coverage.

Conrad Von Gorrell, testifying for the appellants, stated that he resided near Fleischman's property, and went there shortly after the fire, where he saw the appellee standing near one of the burned buildings, and that during the course of their conversation Fleischman stated he was sorry the buildings had burned and that "everything was insured but that," but Fleischman flatly denied ever having made that statement.

Herbert Sandler testified for the appellants that he had lived in the vicinity of the Providence Hospital

Farm for thirty-three years, and had worked on it before Fleischman became its owner. He stated that the "Upper Farm" was always known as the "Providence Hospital Farm" and the lower place was always called "either the Sisters' Home or the Annex."

Hubbert R. Quinter, an insurance agent, testified that he visited Fleischman's property in April, 1932, for the purpose of insuring the buildings, that Fleischman took him over the farm, showed him which buildings were to be covered, that they did not go on to the Annex; that he insured no buildings located on that part of the farm. He also testified that about sixty days later Fleischman cancelled the policies because he thought the rate was too high.

Joseph E. Casey testified that he did all the inspecting for Young and Simon, the agents through whom the Fleischman policies were written, that, seven or eight years before the trial of this case, he had inspected the property for the purpose of insuring it for Witt, and that, as a result of that inspection, Young and Simon procured policies through their company on certain buildings located on the main farm, but no inspection was made of any buildings on the Annex; that after the fire, he visited the property with a copy of the Fleischman policy and, after checking the buildings, informed Fleischman that there was apparently no coverage on them. When Fleischman replied that the property was insured, the witness suggested that he procure the policies for his examination. Fleischman answered that the policies were at the bank and he did not have time to go there for them.

Carl M. Weigle testified that he was employed as an underwriter for Young and Simon, and that in January, 1933, Notes brought an expired Witt policy to his office and designated certain buildings which had been insured thereby to be covered by a new policy, that inasmuch as nothing was insured in the new policies that was not contained in the previous policy, and as the amounts of insurance were reduced, no new inspection was made.

The witness also testified that Casey had been employed by Young and Simon for seventeen years and during that time no one else had made any inspection for them.

George D. Bunting, an adjuster for the Fire Companies Adjustment Bureau, testified that he visited the property after the fire, and was unable to identify the burned buildings with those insured under the policies, that there were buildings on the farm proper, not involved in the fire, which corresponded with those insured. On one of his visits to the property, he informed Fleischman that he was not able to find any coverage on the burned buildings, to which Fleischman replied that they were covered and he had the policies at the bank. Bunting requested Fleischman to produce policies so he could check them against the copies which the insurance company had turned over to him after the fire, but Fleischman failed to do so.

To sustain the contention that the case should have been withdrawn from the consideration of the jury, appellants advance two propositions, first, that the evidence was legally insufficient to justify its submission, and second, which is really a ground for the first, that it is conclusively shown appellants never intended to insure the buildings destroyed by fire, and hence there was no meeting of the minds between the contracting parties.

The description in the policies of the insured buildings with which we are here concerned, in addition to four dwellings, is as follows:

"$1000.00 on shingle roof, frame hay barracks.

"$1500.00 on composition roof, tile incubator and brooder house and additions."

This description might apply equally to the buildings destroyed on the Annex as to those upon the main farm which were not destroyed, and to this extent the policies may be termed ambiguous as to the properties insured. In such cases extrinsic evidence is admissible to identify the properties insured and thus remove the ambiguity; and such evidence in no way varies or alters the contract between the parties, but explains it. *Couch, Cyclopedia*

*of Insurance Laws*, secs. 166-218; *Cooley's Briefs on Insurance*, secs. 1192-1196-1223; *Planters' Mutual Ins. Co. v. Deford*, 38 Md. 382; *Frederick County Mutual Fire Ins. Co. v. Deford*, 38 Md. 404.

Since Notes, the broker, who secured the policies written by appellants, acted under appellee's direction, it would seem clear that he must be regarded as agent of the latter. *Couch, Cyclopedia of Insurance Law*, sec. 452; *American Fire Ins. Co. v. Brooks*, 83 Md. 22, 34 A. 373. But whether his status was that of Fleischman's agent throughout the transaction or merely his agent during the preliminary negotiations, and the agent of appellants through the remainder, can make little difference in the present case, for, as previously detailed, no doubt arises as to exactly what was done by him, and the dispute between the parties is not affected by his conduct.

Manifestly, if the contention of appellants is true that, in writing the policies here sued upon, they covered only the buildings insured by the Witt policy, which buildings in turn were located on the main farm, it must follow that the buildings which were destroyed by fire and which admittedly were located upon the Annex were not insured. But the policies insured four dwellings, and it was testified without contradiction by any one that only three dwellings were erected upon the main farm and the fourth was on the Annex. This having been shown, it cannot be said that appellants are correct in the contention that the insured buildings were located solely upon the main farm. Moreover, for whatever it was worth, appellee testified that the destroyed buildings located upon the Annex had been covered by the policies, further that an inspection of them was made by a representative from the office of Young and Simon. It is true that his narrative concerning the inspection was vague in failing to fix the time it was made, but this could readily have been ascertained by appellants during his cross-examination, had they desired to do so. It cannot be said that a rational mind

could not have concluded that no buildings were insured upon the Annex except a dwelling, nor that a rational conclusion could not have been reached that the buildings destroyed by fire were insured by the policies.

It is certain that appellants, contrary to their present contention, insured at least one dwelling which was located on the Annex, and whether in addition thereto they insured other buildings on the Annex, including those destroyed by fire, was, we think, properly left to the jury's determination under all the evidence, inasmuch as the description in the policies could have applied to the buildings which were destroyed.

Appellants' contention that there has been no meeting of the minds respecting the subject of insurance is without merit. They themselves issued policies which were ambiguous as to the properties covered, and, as we have heretofore pointed out, it became a question for the jury, after hearing the evidence, to identify the properties and thereby ascertain whether they were those which were destroyed by fire. Having used language in the insurance contracts which produced this result, they cannot now escape the consequences which may logically follow by asserting it was never their intention to insure the properties on the Annex. If this contention were accepted, the rights of an insured, after sustaining loss, could, under policies of this character, always be defeated by an insurer, simply by testifying without contradiction that he had no intention of covering the property destroyed. *Williston on Contracts* (Rev. Ed.), sec. 22.

In *Washington Fire Ins. Co. v. Davison and Symington*, 30 Md. 91, our predecessors held that ambiguous language could not be controlled by the insurer's understanding, without proof that such understanding was known to the insured. That decision applies with equal force to the views above expressed concerning appellants' second contention.

Since the only rulings complained of relate to the refusal of the trial court to grant appellants' instructions

for a directed verdict, and it having been found that in this respect the court's action was free from error, the judgment appealed from must be affirmed.

*Judgment affirmed, with costs.*