EBERT ET AL., TRADING AS GEORGE EBERT & SONS *v.* MILLERS MUTUAL FIRE INSURANCE COMPANY

[No. 27, September Term, 1959.]

604

*Decided November 18, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Marvin Ellin,* for appellants.

*Max Sokol* and *Melvin J. Sykes,* with whom were *Dickerson, Nice & Sokol* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiffs-appellants, trading as George Ebert & Sons, the Eberts, appeal from a judgment N.O.V. for the defendant-appellee, Millers Mutual Fire Insurance Co., the Insurance Company, in a suit on a fire insurance policy. The policy covered loss by fire or lightning and the claim in controversy on this appeal is for damage by lightning to a wall,

which, together with other structures, enclosed the lot upon which stands the building covered by the policy now in controversy. The principal question is whether the wall was or was not covered by this policy. The trial court held that it was not.

The Eberts own a rather large, irregularly shaped lot known as No. 3703 East Baltimore Street in the City of Baltimore. It has a frontage of about 128 feet on the south side of Baltimore Street and an overall depth of about 143 feet. Its southern line is about 213 feet in length. The lot may be roughly described as consisting of two rectangles, the larger of which, including the whole Baltimore Street frontage, is about 128 feet by 143 feet, and the smaller of which with dimensions of 98 feet (east and west) by 32 feet (north and south) might be described as a pocket. It adjoins the southeast corner of the larger rectangle and the southern line of the pocket is an extension of the southern line of the larger rectangle.

There are four buildings on the lot, all of which are in the larger rectangle. The largest one, herein called "Building A", is a one-story structure built by the Eberts, and stands in the extreme northwest corner. It fronts 50 feet on Baltimore Street and has a depth of 75 feet. The three smaller buildings, herein called "Buildings B, C and D", respectively, all back on the eastern boundary of the lot. Building B is on the south side of Baltimore Street in the extreme northeast corner of the lot. Building C adjoins B, and D adjoins C. They have a combined depth of about 93 feet south from Baltimore Street. The only entrance to the lot is through a gate or opening in a wall or fence on Baltimore Street between Buildings A and B.

In Building A the appellants carry on a sheet metal, plumbing and ventilating business. Buildings B, C and D are used for storage or garage purposes. The appellants bought the lot in 1952, at which time only Buildings B, C and D were on it. There was then a wooden fence, which, together with walls or buildings on the lot or on adjacent lots, enclosed the entire premises. The appellants then constructed Building A and replaced the wooden fence with a cement block wall.

This wall does not touch Building A. It begins at the south end of a building on an adjoining lot which extends about 34 feet south from Building A, runs south about 34 feet to the south line of the Eberts' lot, then east the entire length of the south boundary, then around the pocket, and finally to the south wall of Building D. With this cement block wall and other structures, the Eberts' lot is entirely enclosed.

The Eberts took out three separate policies of insurance against damage by fire or lightning with the appellee Insurance Company. The first, No. B-140687, covered Buildings B, C and D for an aggregate amount of $5,000; the second, No. 126088, in the amount of $4,000 covered furniture, fixtures and stock in trade contained in Building A or additions thereto; and the third, No. B-140709, covered Building A for $16,000. Each policy contained an 80% co-insurance clause. There was attached to each of the policies a printed form known as "Form 804 B" which set forth the terms of the coverages. These coverages were referred to in the insuring clause on page 1 of each policy, along with the description of the property covered. "Coverage A" was made applicable under the policies on the buildings; "Coverages B and C" were made applicable under the policy covering furniture, fixtures and stock in trade.

On September 10, 1957, a portion of the wall along the south side of the lot, at or near the southeast corner, and at least partly along the pocket, collapsed during a severe storm; and some of the stock in trade at or near the break was also damaged by the collapsing wall.

The Eberts brought suit originally in November, 1957, on the first and third policies seeking to recover for damage to the wall. They filed an amended declaration in April, 1958, seeking by the first count to recover on the third policy, covering Building A (but omitting any claim on the first policy covering Buildings B, C and D), for damage to the wall, and seeking by the second count to recover under the second policy for damage to personal property.

At the trial several questions were presented: (a) whether the loss was due to lightning or not; (b) whether the wall was covered by the policy on Building A; (c) whether the

stock in trade in the yard near the collapsed wall was covered by the policy on personal property; and (d) sundry questions as to costs and values and the operation of the 80% co-insurance clause. At the conclusion of the testimony six issues were submitted to the jury. The first was whether or not lightning caused the wall to fall, and the answer of the jury was "Yes". That question is not sought to be reopened on this appeal. The other issues all related to costs, values and damages, and no issue is raised on the appeal with regard to these matters or to the arithmetic of the operation of the co-insurance clause, which was worked out by the trial judge on the basis of the jury's findings on this group of issues.

The trial court reserved the questions of coverage for consideration by the court, not by the jury. Both parties fully acquiesced in this at the time of the trial. Judgment *nisi* was entered for the plaintiffs for the sum of $5025.27 upon the return of the jury's answers to the issues submitted. This was the maximum amount of damages to which the plaintiffs might be entitled if the questions of coverage were finally resolved in their favor. The defendants, who had filed a motion for a directed verdict which had been overruled, filed a motion for judgment N.O.V. or, in the alternative, for a new trial. The amount of the judgment *nisi* was a composite of $1577.00 under the policy on personal property and $3448.27 under the policy on Building A. The trial court denied the motion for judgment N.O.V. as to damages to personal property and granted it as to damages under the policy on Building A. The Insurance Company paid the $1577.00 judgment with respect to personal property, so that no question as to its correctness is presented for review, and the Eberts' appeal brings up only the judgment for the Insurance Company on the Building A policy.

The appellants rely upon two provisions of Form 804 B included in the Building A policy. Both appear in the same paragraph, which reads as follows:

"Coverage A: BUILDING(S) OR STRUC-TURE(S)—Where the term 'building' is used ex-

cept as otherwise excluded, it shall be understood to include additions and extensions thereto, adjoining and communicating; permanent fixtures of the building, including machinery pertaining to the service of the building and refrigerating apparatus and equipment, when a part of the realty; signs, flag poles and fences; also awnings, storm and screen doors and windows, whether in position or stored on the premises. The term 'machinery' as used in this paragraph does not include machinery, apparatus or appurtenances for manufacturing purposes."

The appellants rely upon the "additions and extensions" clause and upon the inclusion of "fences" within the structures covered by the term "building".

The trial court rejected the "additions and extensions" contention, and we agree. There was some testimony to the effect that the wall was built in a certain way with the purpose in mind of its being used at some future time as part of an extension of Building A. It is perfectly clear that it was not so used. There were not, indeed, any plans for its immediate use as a part of any building nor was there any showing even of any plans for an early extension of or addition to Building A. The wall was simply an enclosing wall at the time of the loss. The one case cited by the appellants in support of this contention is *Ideal Pump and Mfg. Co. v. American Central Insurance Co.,* 167 Mo. App. 566, 152 S. W. 408, holding certain non-contiguous sheds to be within the terms of a policy on a building which also covered "additions, adjoining and communicating" with the main building. That case presents a quite different state of facts from ours. Here we have a remote wall, not a building nor a part of any building. For cases reaching an opposite result to that of the *Ideal Pump* case even in the case of actual buildings, see *Pilgrim Laundry & Dry Cleaning Co. v. Federal Ins. Co.,* 140 F. 2d 191 (4th Cir. 1944); *Melder v. Great American Ins. Co.,* 9 So. 2d 243 (La. App.); and *Agnew v. Sun Insurance Office,* 167 Wis. 456, 167 N. W. 829. We think that the facts of the instant case are stronger than the facts of any of the cases just cited

as showing that the structure damaged or destroyed was not an extension of or addition to Building A.

The next question is whether or not the concrete block enclosing wall was a "fence" within the meaning of the Building A policy. The appellants contend that the definition of "fence" includes a wall which serves as an enclosure or barrier along the boundary of a field, park or yard which it is desired to defend from intruders. See the Oxford English Dictionary, Vol. 4. See also Funk & Wagnall's New Standard Dictionary, Vol. 1; 16 Words and Phrases, "Fence"; Black's Law Dictionary, (4th Ed., 1951); *Cruciano v. Ceccarone,* 133 A. 2d 911 (Del. Ch.); *Parrish v. Hainlen,* 124 Colo. 229, 236 P. 2d 115; *Kimball v. Carter,* 95 Va. 77, 27 S. E. 823. The appellee does not deny that a wall may constitute a fence, but vigorously contends that the wall here involved was not, and was not intended by the parties to be, included in the term "fences" as used in Coverage A of the policy.

The appellants now also contend, and the appellees agree, that whether or not the term "fences" as used in the policy covered the wall, was a question of fact, though at the trial it was regarded without dissent as one of law. The appellants contend for one interpretation of the term, the appellee for the opposite.

The appellants raise one contention with regard to this matter, which we shall dispose of as a preliminary to the decision of the principal question in the case. This contention is based upon Maryland Rules, Rule 560a 5. Rule 560 deals with special verdicts. Subdivision a 5 reads as follows:

> "5. Finding on Omitted Issue.
> As to an issue omitted without such demand [i.e., a demand by any party for its submission to the jury] the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment *nisi* entered."

The appellant contends that since the judgment *nisi* included a judgment based upon the Building A policy, its entry carried with it a finding of fact that the term "fences",

as used therein, did apply to the wall in question. Such a contention is in direct conflict with the reservation of the questions of coverage for determination by the court, to which both parties had agreed. We do not think that in the face of that agreed reservation, the appellants' contention on this subject has any merit whatever. We may add that if, in the absence of the agreed submission to the court of the question of coverage, there was any question of fact as to coverage for determination by the jury, any right to have such a question passed upon by the jury was clearly waived by both parties through failure to demand that such an issue be submitted to the jury. Maryland Rules, Rule 560a 4.

Apart from the possible application of Rule 560a 5, which we have rejected, it makes little, if any, practical difference in this case whether the question of coverage be regarded as one of law or of fact. The problem of drawing the line of demarcation in cases of the interpretation or construction of contracts between the function of the court and that of the jury (where there is no such agreement, as in the instant case, to submit a question to the court), is noted and discussed in 3 Williston, *Contracts*, § 616 (Rev. Ed. 1936). The record in this case presents no real dispute as to the facts which are pertinent to the question of coverage. That question is one of the construction of the contract in the light of the language employed in the contract, the subject matter and the surrounding circumstances. When these are clear, it is the province of the court, rather than of the jury, to construe the contract. *Sperling v. Terry,* 214 Md. 367, 135 A. 2d 309; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563. Where, however, the surrounding circumstances, as shown by evidence properly admissible or admitted without objection, create a doubt as to the meaning of the contract, the question of the meaning of the contract may be submitted to the jury. *Montauk Corporation v. Seeds,* 215 Md. 491, 138 A. 2d 907, and cases and authorities therein cited, including 3 Williston, *op. cit., supra,* § 616.

A general rule as to the construction of an insurance policy is that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. *Dyer v. Royal*

*Insurance Co.,* 220 Md. 105, 150 A. 2d 915, and cases therein cited. Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is to be most strongly construed against the insurer. *Frontier Mortgage Corp. v. Heft,* 146 Md. 1, 125 A. 772; *Brownstein v. New York Life Insurance Co.,* 158 Md. 51, 54, 148 A. 273. On the other hand, as in other cases involving the construction of contracts, where an instrument is drawn by one party an ambiguity will be resolved against the party who drafted the document. *Brownstein v. New York Life Insurance Co., supra; New England Mutual Life Ins. Co. v. Hurst,* 174 Md. 596, 604, 199 A. 822. See also *Hankins v. Public Service Mutual Insurance Co.,* 192 Md. 68, 85, 63 A. 2d 606, citing *Restatement, Contracts,* § 236 (d), comment (1932). There are, of course, cases in which the identity of the thing insured is in question, as in *Eagle Star & British Dominions Ins. Co. v. Fleischman,* 175 Md. 433, 2 A. 2d 424; but the question here is not one of the identity of the property described in the policy, but a question of the extent of coverage afforded under the terms of the policy. Cf. *Landwehr v. Continental Life Ins. Co.,* 159 Md. 207, 150 A. 732, where insurance against damage due to the wrecking of an automobile or motor-driven car was held not to cover death due to an accident in which the plaintiff's decedent was thrown from a motorcycle side car; and *Levy v. American Mutual Liability Ins. Co.,* 195 Md. 537, 73 A. 2d 892, where a policy indemnifying an employer against loss of specified kinds of personal property due to the fraud or dishonesty of an employee was held not to cover loss of profits due to an employee's fraudulent competition with the employer.

The case last cited involved and applied the doctrine of *ejusdem generis,* and the Insurance Company here seeks to invoke a similar argument. It contends that the word "fences" as used in Coverage A is found in the middle of a paragraph which, in describing things which the word "building" should include, enumerates various things which (in the words of the appellee's brief) are "appurtenances *of the building"* to be covered. One difficulty with construing Coverage A as requiring that all property therein described must be physi-

cally attached to the building, or something closely approximating being so attached, is that the clause in which the word "fences" appears is in contrast with, and seemingly is carefully and intentionally insulated as a matter of punctuation from, other clauses in which things covered by the policy are described in terms integrating them closely with the building. One of these other clauses speaks of "additions and extensions * * * adjoining and communicating," another of "permanent fixtures of the building, including machinery * * * when a part of the building," and the third, of "awnings, storm and screen doors and windows, whether in position or stored on the premises."

A further and perhaps more serious difficulty with this line of argument as a support for the Insurance Company's position is that a fence may well be appurtenant to a building, though it is not attached to the building or contiguous to it. The same may be said of flagpoles and of signs, which are bracketed in the same clause with fences. In the instant case the principal business building of the Eberts is Building A. The use of the other buildings and of the yard enclosed by the wall are auxiliary to the Eberts' use of Building A, and it is a matter of business prudence at least, and more probably a matter of business necessity, that the storage yard be enclosed for the protection of the materials kept there. In such circumstances, we think that the term "fences" as used in this policy may fairly be said to include the enclosing and protecting wall here in question as appurtenant to the building.

The trial judge arrived at an opposite conclusion largely on the basis that if the wall were covered by the Building A policy now in suit, it would also be covered by the policy on Buildings B, C and D, which was put in evidence by the defendant Insurance Company but which was not sued upon by the plaintiffs after they amended their original declaration. Coverage A was the same in both policies. The trial judge seems to have been to some extent impressed by the practical difficulties of determining what would be covered by which policy if both applied, because of questions as to the application of the co-insurance clause and as to the apportionment of loss if one company carried the insurance on one building

and another carried it on the others. He pointed out that the portion of the wall which collapsed was much nearer to Building D than to Building A. He also considered the amendment of the declaration as a concession by the plaintiffs that the Buildings B, C and D policy did not apply to the wall. At bottom, however, his interpretation of the policy seems to have been based upon the view that because both policies might apply to the wall, neither one was intended to do so.

We are unable to agree with those views. For reasons already set forth, as a matter of lexicography, we think that the term "fences" can and does include an enclosing wall and that in the circumstances of this case there is no basis for so restricting the term as to exclude from it an enclosing wall around a business lot erected as an adjunct to the business carried on in the building which was the main structure covered by the policy. The language of an insurance policy, when unambiguous, is to be given its ordinary and usually accepted meaning. *Levinson v. Reliance Life Insurance Co.,* 184 Md. 453, 461, 41 A. 2d 485; *United Life & Accident Ins. Co. v. Prostic,* 169 Md. 535, 537, 182 A. 421, and cases therein cited. This is so even though one of the parties may contend that it was not its intention to insure the particular property in question. *Eagle Star, etc., Ins. Co. v. Fleischman, supra.* Even if there may be some ambiguity as to the meaning of the term "fences", since it is the language of the defendant Insurance Company (included in one of its stock forms), it would be resolved against that party. See *New England Mutual Life Insurance Co. v. Hurst, supra,* and other authorities above cited on this point.

We are unable to accept the argument that because both policies may cover the wall in question, neither one does. Neither the 80% co-insurance clause nor the question of apportionment of loss between different policies persuades us of the soundness of that argument. Any practical difficulty which either of these provisions might pose may be a strong reason for holding that one policy and not the other should apply to the wall. If so, the policy on Building A would seem to be the logical one to apply because of the wall being auxiliary primarily to the business carried on in Building A.

Indeed, the wall was not erected to replace the old fence until Building A was constructed.

But even if both policies could and did apply, questions relating to co-insurance and to other insurance would seem to be matters of defense to the policy sued upon, by way of limitation of damages, but not to serve as a basis for completely destroying a coverage afforded. In the present case no question of other insurance was actually involved, since there was no policy of insurance issued by any other insurance company covering the wall in question. There was a suggestion that by reason of the 80% co-insurance clause it was advantageous to the Eberts to sue on the Building A policy and not on the other for the reason that Buildings B, C and D were proportionately less adequately insured than Building A. There was, however, no request for any issues as to the values of the three smaller buildings, and there was no prayer seeking to raise any question of the amount or limitation of damages based upon the values of those buildings and the 80% co-insurance clause.

Our conclusion is that the judgment N.O.V. in respect of damages to the wall should not have been entered. Since the amount of those damages is not disputed we think it appropriate to enter judgment for the plaintiffs-appellants in the amount agreed to be payable, if the Insurance Company is liable at all. Maryland Rules, Rule 875a.

> *Judgment for the defendant-appellee reversed without a new trial, and judgment entered for the plaintiffs-appellants for $3448.27, with interest from December 19, 1958; the costs to be paid by the appellee.*